UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
SHAHIDAH HAGANS,

                    Plaintiff,

                                        <u>MEMORANDUM & ORDER</u>
            -against-                   18-CV-1917(JS)(AYS)

NASSAU COUNTY DEPARMENT OF
SOCIAL SERVICES, CHILD PROTECTIVE
SERVICES OF NASSAU COUNTY, KELLY
MAHER, ROSEANNE GITTENS, CAROLYN
RODRIGUEZ, JEWISH CHILD CARE
ASSOCIATION (JCCA), MADONNA HEIGHTS,
JANE AND JOHN DOES 1-20, whose names
are unknown (in their official
capacities)

                    Defendants.
-----------------------------------X
APPEARANCES
For Plaintiff:      Shahidah Hagans, <u>pro</u> <u>se</u>
                    1 Griggs Drive
                    Greenlawn, New York 11740

For Defendants:
Nassau County       Jennean R. Rogers, Esq.
                    Nassau County Attorney's Office
                    One West Street
                    Mineola, New York 11501

Jewish Child Care
Association (JCCA)  Glen Feinberg, Esq.
                    Wilson, Elser, Moskowitz, Edleman & Dicker LLP
                    133 Westchester Avenue
                    White Plains, New York 10604

Madonna Heights     Robert Scott Delmond, Esq.
                    Conway, Farrel, Curtin & Kelly, P.C.
                    48 Wall Street, 20th Floor
                    New York, New York 10005

SEYBERT, District Judge:

Pro se plaintiff Shahidah Hagans ("Plaintiff") initiated this action asserting violations of 42 U.S.C. §§ 1983 ("Section 1983"), 42 U.S.C. § 1985 ("Section 1985"), the New York State Constitution, and New York state tort law against defendants Nassau County Department of Social Services ("DSS"), Child Protective Services of Nassau County ("CPS"), Kelly Maher ("Maher"), Roseanne Gittens ("Gittens"), Carolyn Rodriguez ("Rodriguez") (collectively, the "Nassau County Defendants"), Jewish Child Care Association ("JCCA"), and Madonna Heights ("Madonna Heights") (collectively, "Defendants"). Currently pending before the Court are Defendants' motions to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Nassau Cty. Mot., D.E. 30; Madonna Hts. Mot., D.E. 28; JCCA Mot., D.E. 33.) For the reasons that follow, Defendants' motions to dismiss are GRANTED and Plaintiff is GRANTED leave to file a Second Amended Complaint.

BACKGROUND[1]

Plaintiff alleges that on or around July 2014, CPS, in connection with non-party Nassau County Police Department ("NCPD"), harassed her "for approximately three months" because she declined to speak to CPS without an attorney. (Am. Compl.,

---

[1] The allegations in the Amended Complaint are assumed to be true for purposes of this Memorandum and Order. Dick v. Enhanced Recovery Co., LLC, No. 15-CV-2631, 2016 WL 5678556, at *2 (E.D.N.Y. Sept. 28, 2016) (citation omitted).

D.E. 13, at 2.)    According to Plaintiff, the NCPD sent police officers to her home when there were no reports of "imminent danger" to her children.  (Am. Compl. at 2.)

Plaintiff developed an adverse relationship with the NCPD resulting in her "illegal arrest."  (Am. Compl. at 2.)  The Amended Complaint does not indicate when this arrest occurred.  As a result, Plaintiff's children were removed from her care for two weeks.  (Am. Compl. at 2.)    An unspecified court granted Plaintiff's petition for her children's return and entered a temporary order of supervision pending litigation regarding the removal.[2]  (Am. Compl. at 2.)  According to Plaintiff, her children were not comfortable speaking with CPS and CPS disturbed her, and her children at school, by using unreasonable tactics in violation of their rights.  (Am. Compl. at 2.)

On March 19, 2015, Defendant Maher, a CPS caseworker, spoke with Plaintiff's five-year-old son ("J.J.H.") at school. (Am. Compl. at 2.)  J.J.H. allegedly told Maher that there was a gun in Plaintiff's home and that Plaintiff hit him.  (Am. Compl. at 2.)  Maher attempted to visit Plaintiff's home and left a note indicating that she would return the next day.  (Am. Compl. at 2.)

---

[2] Plaintiff references "civil litigation pending for the wrongful arrest."  (Am. Compl. at 2.)  The Court assumes Plaintiff is referring to the separate action pending before this Court at No. 18-CV-1918.

Later that same day, Maher returned and Plaintiff informed her that she would "not entertain any false allegations." (Am. Compl. at. 2.) Maher threatened to return with the police and six hours later removed J.J.H. from Plaintiff's home after she became angry with Plaintiff for not cooperating. (Am. Compl. at 3.) According to Plaintiff, Maher was not concerned for J.J.H.'s safety because Maher "allowed 6 hours to elapse before making the decision to remove" J.J.H. and "acted off personal motives and vendetta."[3] (Am. Compl. at 3.)

According to Plaintiff, DSS failed to follow proper protocol to reunite Plaintiff with her children and provided her with only vague answers regarding the custody process. (Am. Compl. at 3.) Plaintiff wrote to the Directors of the Foster Care Unit to alert them that Defendant Gittens was not competent and to ask for her to be replaced. (Am. Compl. at 3.) Plaintiff never received a response. (Am. Compl. at 3.)

At an unspecified time, and after her children were in

_____

[3] Although not named as Defendants, Plaintiff alleges that between November 2014 and March "20165," the principal of Westbury School District and Dryden Elementary School aided CPS by disclosing privileged information that "in no way constituted any neglect or abuse" rather than by official report. (Am. Compl. at 3.) The school district ignored Plaintiff's request to prohibit her children from speaking with CPS without her authorization. (Am. Compl. at 3.) Plaintiff initiated a separate action against North Babylon School District and various school officials at Case No. 18-CV-0464.

4

DSS care for eleven months, Plaintiff received a letter detailing the process for regaining custody of her children. (Am. Compl. at 4.) Court officers informed Plaintiff that DSS declined her request for custody due to her "righteously indignant attitude." (Am. Compl. at 4.) After Plaintiff substituted counsel, she was instructed to "refrain from expressing [her] feelings outwardly" and then regained custody of her children. (Am. Compl. at 4.)

At some point after Plaintiff was criminally charged for unspecified conduct, orders of protection were entered in favor of her children against Plaintiff. (Am. Compl. at 4.) The orders of protection hindered Plaintiff's "due process rights" to Family Court hearings pursuant to Section 1028 of the Family Court Act. (Am. Compl. at 4.) Plaintiff alleges that CPS "sabotaged" her request for Family Court to retain "exclusive authority" over the orders of protection. (Am. Compl. at 4.)

Plaintiff further avers that another child ("J.H.") was falsely diagnosed and placed on medications that affected her cognitive function. (Am. Compl. at 4.) Moreover, the Amended Complaint alleges that JCCA acted fraudulently and conspired with CPS by maintaining "fraudulent records of [her] children's mental status, mental diagnoses, and family history." (Am. Compl. at 4.) Plaintiff also alleges that JCCA denied access to her children and, with CPS, medicated her children "against [her] will," were

negligent in allowing her daughter to "engage in drugs, drinking, and unsupervised absconding," and subjecting her to "sexual molestation." (Am. Compl. at 4.) After Plaintiff's March 2015 arrest, three of her children were committed to psychiatric wards and suffered trauma. (Am. Compl. at 5-6.)

PROCEDURAL HISTORY

Plaintiff commenced this action on March 19, 2018. (Compl., D.E. 1.) After many extensions, Plaintiff filed an Amended Complaint asserting: (1) a violation of the Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. § 5106(g), against CPS; (2) violations of Section 1983 against "each and every CPS caseworker and supervisor who had any involvement in the illegal seizure and unwarranted prolonged detainment of [Plaintiff's] children in CPS custody," who had knowledge that CPS policy and procedure were not followed, and who did not intervene;[4] (3) violations of Section 1983 against the DSS and CPS for failure to train, supervise, and discipline employees municipal liability; (4) violations of Section 1985 and the Fourth, Fifth, and Fourteenth Amendments against the "defendant officers and prosecuting attorneys" for conspiracy and against CPS for attempting to suppress her freedom of speech, for violating the

---

[4] As for the first cause of action, Plaintiff alleges a variety of claims as the basis for Section 1983 liability. (Am. Compl. at 5.)

rights of her children to advocate for themselves, and for conspiring to keep her children away from and compromising her rights as a parent; (5) against all Defendants for violations of the New York State Constitution, Article I, Sections 5, 6, 8, 11, and 12; and (6) against all Defendants for violations of various claims sounding in tort. (See Am. Compl. at 5-7.)

Plaintiff seeks $1 million in actual damages, $600,000 in punitive damages, and an order directing the removal of records in the Department of Children and Families database. (Am. Compl. at 7.)

DISCUSSION

I.  Legal Standard

To withstand a motion to dismiss, a complaint must contain factual allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted).

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the]

complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–52 (2d Cir. 2002).

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8. Hiller, 2015 WL 4619624, at *7.

II.  Claims Against Madonna Heights and JCCA

Plaintiff seeks relief against Madonna Heights although Madonna Heights is mentioned only once in the prayer for relief. (See Am. Compl. at 7.) Plaintiff also seeks relief against JCCA although she refers to JCCA in only one paragraph of the Amended Complaint and in the prayer for relief. (Am. Compl. at 4, 7.)

Madonna Heights moves to dismiss the Amended Complaint because, among other reasons, Plaintiff does not allege any facts

under Section 1983 to establish Madonna Heights was involved in an alleged constitutional deprivation.  (Madonna Heights Br., D.E. 28-2, at 6-9.)  JCCA moves to dismiss the Amended Complaint on the grounds that (1) Plaintiff does not allege how JCCA violated her constitutional rights nor that JCCA is a state actor and (2) state law claims fail as a matter of law.  (JCCA Br., D.E. 35, at 3-9.)

In opposition, Plaintiff does not reference or make any arguments as to Madonna Heights or JCCA.  (See generally Pl. Opp., D.E. 42.)  Thus, Plaintiff's claims against Madonna Heights and JCCA are deemed abandoned and are DISMISSED with leave to amend. Jennings v. Hunt Companies, Inc., 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (collecting cases); Randall v. Dish Network, LLC, No. 17-CV-5428, 2018 WL 3235543, at *5 (E.D.N.Y. July 2, 2018) (collecting cases); Verdi v. City of N.Y., 306 F. Supp. 3d 532, 552 (S.D.N.Y. 2018).

III. Claims Against Defendant Rodriguez

Plaintiff names Defendant Rodriguez in the case caption although the Amended Complaint contains no allegations at all as to Defendant Rodriguez.  (See generally Am. Compl.)  "'It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'"  Moschetto v.

9

Nassau Cty. Sheriff, No. 10-CV-1971, 2011 WL 2457927, at *3 (E.D.N.Y. June 16, 2011) (quoting Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999)); Kalamaras v. Ewald, No. 13-CV-4274, 2013 WL 6081705, at *3 (E.D.N.Y. Nov. 18, 2013). In opposition, Plaintiff argues that "Rodriguez showed gross negligence in [her] duties . . . to withhold my children from me based on practices that were outside the scope of [her] duties." (Pl. Opp. at 8.) However, because Plaintiff may not use "her opposition to a dispositive motion as a means to amend the complaint," claims against Defendant Rodriguez are DISMISSED with leave to amend. Shah v. Helen Hayes Hosp., 252 F. App'x 364, 366 (2d Cir. 2007).

IV. Claims Pursuant to CAPTA (42 U.S.C. § 5106(g)) against CPS

Plaintiff asserts a violation of CAPTA against CPS. (Am. Compl. at 5.) However, "none of the 'provisions of CAPTA provide[ ] for an independent private right of action, or that an implied right of action exists pursuant to 42 U.S.C. § 1983 for a violation of this action.'" Hamrick v. Hamrick, No. 14-CV-0176, 2014 WL 1795163, at *10 (N.D.N.Y. May 6, 2014) (quoting Ingrao v. Cty. of Albany, No. 01-CV-0730, 2006 WL 2827856, at *6 (N.D.N.Y. Oct. 2, 2006)) (alterations in original); see also Daniels v. Murphy, No. 06-CV-5841, 2007 WL 1965303, at *2 n.4 (E.D.N.Y.

July 2, 2007).  Accordingly, Plaintiff's claims under CAPTA are DISMISSED with prejudice.

V.    Claims Asserted on Behalf of Plaintiff's Children

It appears that Plaintiff may assert claims on behalf of her children.  (See, e.g., Am. Compl. at 7.)  Federal Rule of Civil Procedure 17(c)(1)(A) permits a guardian to bring suit on behalf of a minor.  "However, it is well established that '[a] person who has not been admitted to the practice of law may not represent anybody other than himself.'"  Bullock v. DSS, No. 17-CV-1302, 2018 WL 1115218, at *4 (N.D.N.Y. Jan. 18, 2018), R&R adopted, 2018 WL 1111059 (N.D.N.Y. Feb. 26, 2018) (quoting Guest v. Hansen, 603 F.3d 15, 20 (2d Cir. 2010)).  This rule extends to parents: "[A] parent not admitted to the bar cannot bring an action pro se in federal court on behalf of his or her child."  Tindall v. Pultney High Sch. Dist., 414 F.3d 281, 284-85 (2d Cir. 2005).

Plaintiff does not sufficiently state on whose behalf many of her claims are made.  Therefore, if Plaintiff files a Second Amended Complaint and proceeds pro se, as described below, she should not include any claims on behalf of her minor children.

VI.   Plaintiff's Section 1983 Claims

To state a claim under Section 1983, Plaintiff must plead that Defendants deprived her of a federal or constitutional right while acting under color of state law.  Cox v. Warwick Valley Cent.

11

Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011). As a preliminary matter, Plaintiff alleges that CPS workers were "negligent in their duties" in violation of Section 1983. (Am. Compl. at 5, 7.) "Allegations of negligence are insufficient to state a claim under § 1983." Butler v. N.Y. State Corr. Dep't, No. 94-CV-5054, 1996 WL 438128, at *3 (S.D.N.Y. Aug. 2, 1996) (citing Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986)). On this basis, claims against the individual named CPS caseworker Defendants, and "each and every CPS caseworker and supervisory who had any involvement" (Am. Compl. at 5), in the removal of Plaintiff's children, are DISMISSED with leave to amend.

Nonetheless, after a liberal reading of the Complaint, the Court construes the Amended Complaint as asserting Section 1983 claims arising out of due process violations for: (1) CPS's decision to remove her children from her home; (2) CPS's failure to follow proper procedure in removing her children from her home; and (3) the decision to pursue an order of protection causing Plaintiff's separation from her children. (See Am. Compl. at 3-4; Pl Opp. at 3-4.) "The state's removal of a child from his or her parent may [ ] give rise to a variety of cognizable constitutional claims." Southerland v. City of N.Y., 680 F.3d 127, 142 (2d Cir 2012) (explaining that parents may assert a claim

for violation of right to substantive due process and due process). The Court addresses each in turn.

A.  Substantive Due Process

"Parents have a 'substantive right under the Due Process Clause to remain together with their children without the coercive interference of the awesome power of the state.'" Southerland, 680 F.3d at 142 (quoting Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999)) (alterations omitted). "'While a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the 'fact of the removal' itself." Id. (quoting Bruker v. City of N.Y., 92 F. Supp. 2d 257, 266-67 (S.D.N.Y. 2000)) (alteration in original). To establish a substantive due process violation based on the removal of children from the home, "'a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Mortimer v. City of N.Y., No. 15-CV-7186, 2018 WL 1605982, at *14 (S.D.N.Y. Mar. 29, 2018) (quoting Southerland, 680 F.3d at 151) (internal quotation marks omitted).

There is no violation of a parent's constitutionally protected interests where a caseworker "has a reasonable basis for thinking that the child is abused or neglected." Southerland, 680 F.3d at 152. The reasonable basis standard reflects the "need for

13

unusual deference" to those who investigate allegations of child abuse or neglect. Id. A temporary removal for several days does not affect a substantive due process violation where the purpose is to keep the child safe. Id. at 152-53. Of critical significance, once a "court confirmation of the basis for removal is obtained, any liability for the continuation of the allegedly wrongful separation of parent and child can no longer be attributed to the officer who removed the child." Id. at 153 (internal quotation marks and citations omitted).

Accepting all allegations as true, Plaintiff asserts a plausible substantive due process claim if a post-removal judicial proceeding was not "promptly held to confirm that there exists a reasonable basis for the removal. Id., 680 F.3d at 153. However, Plaintiff fails to allege sufficient facts for the Court to ascertain the period of time for which her claim is based. Indeed, it is not entirely clear to the Court whether Plaintiff's claim is based on a removal that occurred in 2014 or 2015, or beyond.

Further, Defendants argue, on information and belief, that "the Nassau County Family Court issued some form of a ruling that substantiated the findings of neglect and removal of her children." (Nass. Co. Br., D.E. 32, at 15.) If true, "any liability for the continuation of the allegedly wrongful separation of parent and child can no longer be attributed to the

14

officer who removed the child." Southerland, 680 F.3d at 153 (citations omitted). Yet, the Court cannot determine the "viability of such a substantive due process cause of action on the facts . . . because the record is not entirely clear as to whether such a post-removal judicial proceeding occurred, and if so, the nature of it." Id. at 154. Accordingly, Plaintiff's substantive due process claim arising out of the removal of her children is DISMISSED with leave to amend.

    B.    Procedural Due Process

        Both "parents and the children may have a cause of action for violation of the Fourteenth Amendment under a theory of denial of procedural due process." Southerland, 680 F.3d at 142. In the Second Circuit, "before parents may be deprived of the care, custody, or management of their children without their consent, due process--ordinarily a court proceeding resulting in an order permitting removal--must be accorded to them." Id. at 149 (internal quotation marks and citation omitted). However, "children may be removed without a court order or parental consent in emergency circumstances where there is objectively reasonable evidence that the 'children will be left bereft of care and supervision' and that the risk of harm to the children is imminent." Mortimer, 2018 WL 1605982, at *16 (quoting Southerland, 680 F. 3d at 149).

Plaintiff argues a violation of procedural due process with respect to J.J.H.'s removal because Defendant Maher had no "factual basis to believe there was imminent danger" and instead acted on personal motives. (Pl. Opp. at 4; Am.. Compl. at 3.) The Court construes this as asserting a violation of procedural due process based on inadequate pre-removal proceedings. At this stage in the proceedings, Plaintiff's "allegation--that there was no emergency that warranted the children's removal without a court order--is sufficient," and Plaintiff states a claim that J.J.H. was not in imminent danger, and there was "reasonably sufficient time to seek prior judicial authorization." Sulaymu-Bey v. City of N.Y., No. 17-CV-3563, 2019 WL 1434597, at *5 (E.D.N.Y. Mar. 29, 2019); Southerland, 680 F.3d at 149 (citations omitted).

However, like Plaintiff's substantive due process claim, the Court cannot decipher the basis for Plaintiff's remaining claims for violations of procedural due process, if any. Plaintiff alleges that unspecified orders of protection hindered her right to due process pursuant to Family Court Act § 1028.[5] Yet, the

---

[5] To the extent Plaintiff asserts claims regarding the adequacy of the Family Court proceedings, the court lacks subject matter jurisdiction. Under the Rooker-Feldman doctrine, the Court is barred from reviewing issues that have been adjudicated in state court. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-84, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). The Court also cannot decide issues "inextricably intertwined" with state court decisions. See e.g., Exxon Mobil Corp., 544 U.S. at 286 n.1 (citation omitted). There are no allegations

Court cannot determine (1) the date(s) on which any other removals occurred and whether it is limited to all or some of her children; (2) whether Plaintiff's due process claims are limited to pre-removal procedures or post-removal procedures; (3) details regarding the time, place or substance of any post-removal hearings or orders of protection. Accordingly, any procedural due process claim based on inadequate pre-removal proceedings (other than the removal of J.J.H. described above) and post-removal proceedings are DISMISSED with leave to amend. See Charles v. ACS Kings, No. 16-CV-6589, 2017 WL 384323, at *4 (E.D.N.Y. Jan. 25, 2017).

C.    False Arrest and Malicious Prosecution

The Court also construes the Amended Complaint to allege Section 1983 claims for false arrest and false imprisonment against the individually-named CPS Defendants on the basis that they provided false or misleading evidence that resulted in her arrest. (Am. Compl. 2.)

In the context of Section 1983 false arrest and malicious prosecution claims, "'[a] civilian complainant, by merely seeking police assistance or furnishing information to law enforcement

_____

regarding proceedings in the underlying Family Court case. Nonetheless, "whether ongoing or final, the court lacks subject matter jurisdiction to address issues dealing with child custody, neglect and visitation." Johnson v. N.Y., No. 04-CV-1070, 2007 WL 764514, at *5 n.2 (E.D.N.Y. Mar. 9, 2007), aff'd, 283 F. App'x 877 (2d Cir. 2008) (citing Phifer v. City of N.Y., 289 F.3d 49, 57 (2d Cir. 2002)).

authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charged filed, will not be held liable for false arrest or malicious prosecution.'" Gonzalez v. Delaware Cty., No. 17-CV-0373, 2017 WL 6001823, at *8 (N.D.N.Y. Dec. 4, 2017) (quoting Carmellino v. District 20 of N.Y.C. Dep't of Educ., No. 03-CV-5942, 2006 WL 2583019, at *61 (S.D.N.Y. Sept. 6, 2006)). "An officer's independent decision to arrest a suspect normally 'severs the causal connection' between the informant and the arrestee." Id. (quoting Soto v. City of N.Y., 132 F. Supp. 3d 424, 443 (E.D.N.Y. July 22, 2011)). An informant may be held responsible, however, "if she 'takes an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act, with the intent to confine plaintiff.'" Id. (quoting TADCO Constr. Corp. v. Dormitory Auth. of State of N.Y., 700 F. Supp. 2d 253, 269 (E.D.N.Y. Mar. 19, 2010)) (internal quotation marks and citation omitted). "Such an active role includes the provision of false information leading to an arrest, where the defendants 'lacked reasonable cause for their belief in the plaintiff's culpability.'" Id. (internal quotation marks and citations omitted).

Here, under a liberal review of the Amended Complaint, Plaintiff does not allege any facts surrounding the allegation

that the CPS Defendants insisted or even recommended that officers arrest Plaintiff or that prosecutors criminally prosecute Plaintiff.  On that basis, these claims are DISMISSED with leave to amend.[6]

VII. <u>Fourth Amendment</u>

To the extent Plaintiff alleges that Defendants violated her Fourth Amendment right to be free from illegal searches and seizures as a parent related to the "seizure" of her children, those claims are DISMISSED with prejudice.  "'Fourth Amendment rights are personal rights' that 'may not be vicariously asserted,' such that only the allegedly seized children--not their parents-- may assert a violation of the Fourth Amendment related to seizure of a child by a governmental entity."  <u>Smith v. Tkach</u>, No. 17-CV-0286, 2019 WL 3975440, at *12-13 (N.D.N.Y. Aug. 22, 2019) (quoting

---

[6] Plaintiff argues in opposition that an unspecified person used "her authority to encite [sic] and influence the invasion into my home and property."  (Pl. Opp. at 4.)  However, for the reasons stated above, Plaintiff's claim, to the extent alleged, for unlawful search against the individually-named CPS Defendants on the basis that they provided false or misleading evidence resulting in a search of Plaintiff's home, is DISMISSED.  <u>See</u> <u>Cook v. City of N.Y.</u>, 243 F. Supp. 3d 332, 345 (E.D.N.Y. 2017) ("A plaintiff can demonstrate that her right not to be searched without a warrant 'was violated where the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'") (quoting <u>McColley v. Cty. of Rensselaer</u>, 740 F.3d 817, 823 (2d Cir. 2014)) (additional citation omitted).

Uwadiegwu v. Dep't of Soc. Servs. of the Cty. of Suffolk, 91 F. Supp. 3d 391, 395 (E.D.N.Y. 2015)) (additional citation omitted). Here, Plaintiff seeks to vindicate only her personal Fourth Amendment rights and not those of her children. Therefore, such a claim necessarily fails. Southerland, 680 F.3d at 143.

VIII. Municipal Liability Claim Against DSS and CPS

Plaintiff argues that DSS and CPS "failed to properly train their caseworkers, or supervise and discipline their case workers to correct illegal practices in investigations, abuse of power, illegal detainment of children, obligation not to promote or condone perjury and/or assist prosecution of innocent persons, and failure to reunify the family." (Am. Compl. at 5-6.)

Plaintiff's request for relief against DSS and CPS is DISMISSED with prejudice because they are administrative arms of Nassau County and lack the capacity to be sued as separate entities. See, e.g., Bullock v. DSS, CPS, Comm'r, No. 17-CV-1302, 2018 WL 1115218, at *5 (N.D.N.Y. Jan. 18, 2018), R&R adopted, 2018 WL 1111059 (N.D.N.Y. Feb. 26, 2018) (citing Rose v. Cty. of Nassau, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012)); Schweitzer v. Crofton, 935 F. Supp. 2d 527, 551 (E.D.N.Y. 2013) ("Plaintiffs' claim against the Suffolk County Department of Social Services must be dismissed because it is not a sueable entity."); Bey v. State of N.Y., No. 11-CV-3296, 2013 WL 3282277, at *5 (E.D.N.Y. June 25,

2013) (dismissing claims against Nassau County Child Protective Services because it "is an administrative arm of the County, and not an independent legal entity, it lacks the capacity to be sued").

Given Plaintiff's <u>pro</u> <u>se</u> status and affording the Amended Complaint a liberal construction, the Court considers whether Plaintiff has alleged a plausible Section 1983 claim against Nassau County and finds that she has not. Beyond the facts alleged in this particular case, Plaintiff has not articulated facts regarding the existence of a custom or policy in Nassau County. <u>See</u> <u>Cash v. Cty. of Erie</u>, 654 F.3d 324, 333 (2d Cir. 2011). "It is well-established that 'a single incident in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" <u>Raphael v. Cty. of Nassau</u>, 387 F. Supp. 2d 127, 131 (E.D.N.Y. 2005) (quoting <u>Ricciuti v. N.Y. City Transit Auth.</u>, 941 F.2d 119, 123 (2d Cir. 1991)). Plaintiff has not alleged, nor has she argued, the existence of similar incidents and her "reliance on the facts alleged in this single incident fail to rise to the level of custom or policy required for municipal liability." <u>Id.</u> Therefore, to the extent alleged, Plaintiff's municipal liability claim against Nassau County is DISMISSED with leave to amend.

IX.  Conspiracy under Sections 1983 and 1985

Plaintiff argues that CPS (1) conspired with the County Attorney for Nassau County Family Court to keep her children from her custody and (2) conspired with the police department during her arrest.  (Pl. Opp. at 10-11; Am. Compl. at 5-6.)  The Nassau County Defendants argue that the intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claims.  (Nass. Co. Br. at 23.)

To state a claim for conspiracy in violation of an individual's constitutional rights, a plaintiff must show: "(1) a conspiracy (2) for the purpose of depriving a person of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States."  Salgado v. City of N.Y., 00-CV-3667, 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (citations omitted).

The intra-corporate conspiracy doctrine "posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other."  Daniel v. Long Island Hous. P'ship, Inc., No. 08-CV-1455, 2009 WL 702209, at *9 (E.D.N.Y. Mar. 13, 2009 (collecting cases); see also Herrmann v.

Moore, 576 F.2d 453, 459 (2d Cir. 1978) ("[T]here is no conspiracy [under Section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers [ ] and employees, each acting within the scope of his employment."); Rini v. Zwirn, 886 F. Supp. 270, 292 (E.D.N.Y. 1995). "An exception to the intra-corporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." Tardd v. Brookhaven Nat'l Lab., 407 F. Supp. 2d 404, 414 (E.D.N.Y. 2006) (quoting Bond v. Bd. of Educ., No. 97-CV-1337, 1999 WL 151702, *1 (E.D.N.Y. Mar.17, 1999)).

    Plaintiff alleges that Defendant Maher was acting "off of personal motives and vendetta" when removing her children from her home. (Am. Compl. at 3.) However, "personal bias or prejudice alone, does not support application of the exception; rather there must be some other personal interest or stake alleged on the part of the individual defendants." Broich v. Inc. Vill. of Southampton, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009) (citations omitted). Having carefully reviewed the allegations in the Amended Complaint, Plaintiff has not alleged facts from which it could be inferred that Defendant Maher, in connection with other unnamed Nassau County Police Officers and County Attorneys, was motivated by some "personal stake" rather than carrying out CPS policy. See

Dunlop v. City of N.Y., No. 06-CV-0433, 2008 WL 1970002, at *10 (S.D.N.Y. May 6, 2008); cf. Ali v. Connick, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015).

Moreover, although the Amended Complaint does not name the County Attorney, NCPD, nor the individual Nassau County Police Officers as defendants, Plaintiff's vague and conclusory allegations that Defendants have engaged in a conspiracy to violate her constitutional rights are insufficient to state a claim. Salgado, 2001 WL 290051, at *8-9; Ciambriello v. Cty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (dismissing conspiracy allegations where they were found "strictly conclusory"); Walker v. Jastremski, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983." (citing Ciambriello, 292 F.3d at 325)); Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983). Therefore, Plaintiff's conspiracy claims are DISMISSED with leave to amend. Salgado, 2001 WL 290051, at *9.

X.   Remaining State Law Claims

Having dismissed Plaintiff's federal claims, the Court declines to retain jurisdiction to address Plaintiff's remaining state law claims. One Commc'ns Corp. v. J.P. Morgan SBIC LLC, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its

discretion to decline to assert supplemental jurisdiction over any state law claims.").

However, the Nassau County Defendants argue that Plaintiff's state law claims must be dismissed for failure to comply with New York General Municipal law § 50 et seq. (Nassau Cty. Br. at 20-21.) Plaintiff argues she filed a "Notice of Claim with the Nassau County Clerk to notify the Defendant[s] of my intent to sue within the 3-month period." (Pl. Opp. at 1.) Plaintiff does not allege the date on which she filed a Notice of Claim. Any Amended Complaint should state the date on which Plaintiff filed her Notice of Claim and to whom.

## XI. Leave to Amend

Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted and GRANTS Plaintiff a second opportunity to amend the Complaint to allege her claims in accordance with Federal Rule of Civil Procedure 8 and Federal Rule of Civil Procedure 10 and the guidance set forth above. If needed, Plaintiff shall contact the Hofstra Pro Se Legal Clinic (631-297-2575) or the Pro Se Office (631-712-6060) should she have any questions about obtaining legal assistance. Plaintiff is advised that due to

current health concerns, the Hofstra Pro Se Legal Clinic is CLOSED until further notice. However, where appropriate, it will conduct appointments via telephone until it reopens. If Plaintiff wishes to schedule a phone appointment with the Clinic, she should email PSLAP@Hofstra.edu or leave a message at 631-297-2575 and the Clinic will respond and schedule a phone conference appointment.

Any Amended Complaint shall be clearly labeled "Second Amended Complaint," shall bear docket number 18-CV-1917, and shall be filed within thirty (30) days from the date of this Memorandum and Order. Plaintiff shall also parse out her factual allegations into numbered paragraphs, each limited to a single set of circumstances pursuant to Federal Rule of Civil Procedure 10. If there are individuals that Plaintiff seeks to name as Defendants in her Second Amended Complaint and she cannot identify the individuals personally involved in the constitutional deprivations within the time allowed in this Order, she may designate those Defendants as "John/Jane Doe, working at (location) on (date)" in the caption and provide descriptive information of those individuals in the body of the Second Amended Complaint to allow for their subsequent identification. Plaintiff should not include any claims on behalf of her minor children if she proceeds pro se.

Plaintiff is cautioned that the Second Amended Complaint COMPLETELY replaces the original Complaint and the Amended

Complaint.  Therefore, all claims and allegations Plaintiff wishes
to pursue must be included in the Second Amended Complaint.  If
Plaintiff does not timely file a Second Amended Complaint, judgment
shall enter and this case will be marked closed.

<u>CONCLUSION</u>

For the reasons stated, Defendants' motions to dismiss
(Nassau Cty. Mot., D.E. 30; Madonna Heights Mot., D.E. 28; JCCA
Mot., D.E. 33) are GRANTED.  Plaintiff's claims under CAPTA, for
municipal liability against DSS and CPS, for violations of the
Fourth Amendment, and on behalf of her minor children (to the
extent she proceeds <u>pro</u> <u>se</u>) are DISMISSED WITH PREJUDICE.
Plaintiff's claims against Maddona Heights, JCCA, and Rodriguez as
well as Plaintiff's Section 1983 claims for violations of
substantive and procedural due process, false arrest, malicious
prosecution, unlawful search, municipal liability against Nassau
County, and Section 1983 and 1985 conspiracy claims are DISMISSED
WITHOUT PREJUDICE.  The Court declines to exercise supplemental
jurisdiction over Plaintiff's state law claims.

Plaintiff is GRANTED leave to file a Second Amended
Complaint in accordance with this Memorandum and Order.  Any Second
Amended Complaint shall be clearly labeled "Second Amended
Complaint," bearing docket number 18-CV-1917, and shall be filed
within thirty (30) days from the date of this Memorandum and Order.

If Plaintiff does not timely file a Second Amended Complaint, judgment shall enter and this case will be marked closed.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962). The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Plaintiff.


SO ORDERED.


/s/ JOANNA SEYBERT
JOANNA SEYBERT, U.S.D.J.


Dated:    March __31__, 2020
          Central Islip, New York