UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
SHAHIDAH HAGANS,

                 Plaintiff,                  <u>MEMORANDUM & ORDER</u>
                                          18-CV-1917(JS)(AYS)

     -against-

KELLY MAHER; CAROLYN RODRIGUEZ;
ROSEANNE GITTENS; JOHN & JANE DOES
#1-4 who served as Directors and
Assistant Directors of the Foster
Care Unit from 3/2015 - 11/2016 at
60 Charles Lindbergh Blvd., #160,
Uniondale, NY 11553; NASSAU COUNTY
POLICE OFFICERS JOHN & JANE DOES
#5-10 on 3/19/2015 at 545 Queen
St., Westbury, NY 11590; NYS
DEPARTMENT OF CHILDREN & FAMILY
SERVICES; NASSAU COUNTY FAMILY
COURT ATTORNEY'S OFFICE; COUNTY
ATTORNEY STEPHANIE HUBLEBANK;
JCCA PLEASANTVILLE; CASEY HELBER;
KRISTINA JENNEY; MADONNA HEIGHTS
SCO FAMILY OF SERVICES,
CASEWORKERS AND DIRECTORS MADONNA
HEIGHTS JOHN & JANE DOES #11-13
at 151 Burrs Lane, Dix Hills, NY
11746; NASSAU COUNTY FIRST
DISTRICT COURT ATTORNEY'S OFFICE;
NASSAU COUNTY DISTRICT COURT
ATTORNEYS JANE DOES #14-15 at 99
Main St., Hempstead, NY 11550 on
5/06/2015,

                    Defendants.
-------------------------------X

APPEARANCES
For Plaintiff:        Shahidah Hagans, <u>pro se</u>
                        1 Griggs Drive
                        Greenlawn, New York  11740

For Nassau County
Defendants:           Jennean R. Rogers, Esq.
                        Nassau County Attorney's Office

                         One West Street
                         Mineola, New York  11501

For JCCA
Defendants:              Brandon Michael Berkowski, Esq.
                         Kaufman Borgeest & Ryan LLP
                         200 Summit Lake Drive
                         Valhalla, New York  10595


For Defendant
Madonna Heights:         Robert Scott Delmond, Esq.
                         Conway, Farrell, Curtin & Kelly, P.C.
                         48 Wall Street, 20th Floor
                         New York, New York  10005


SEYBERT, District Judge:

        <u>Pro se</u> plaintiff Shahidah Hagans ("Plaintiff") commenced

this action based upon Nassau County Child Protective Services'

("CPS") removal of her children from her home.  (<u>See</u> Compl., ECF

No. 1.)  Pending before the Court are motions to dismiss filed by

the JCCA Defendants[1] and Nassau County Defendants.[2]  (JCCA Defs.

Mot., ECF No. 64; Nassau County Defs. Mot., ECF No. 65.)  Plaintiff

"concedes" to the dismissal of the JCCA Defendants and only opposes

---

[1]  The  JCCA  Defendants  are  comprised  of:  Jewish  Child  Care
Association  Pleasantville  ("JCCA"),  Social  Worker  Casey  Helber
("Helber"), and Social Worker Kristina Jenney ("Jenney").

[2]  The  Nassau  County  Defendants  are  comprised  of:  Kelly  Maher
("Maher"),  Carolyn  Rodriguez  ("Rodriguez"),  Roseanne  Gittens
("Gittens"),  Nassau  County  Family  Court  Attorney's  Office
("FCAO"),  County  Attorney  Stephanie  Hublebank,  Nassau  County  First
District  Court  District  Attorney's  Office  ("DAO"),  as  well  as
numerous  John  Does  who  served  as  directors  and  assistant  directors
of  the  Foster  Care  Unit  ("FCU  Does")  and  police  officers  ("PO
Does"),  and  worked  at  the  DAO  ("DAO  Does").

dismissal of the Nassau County Defendants.[3]   (See Opp'n, ECF No. 68; Dec. 1, 2020 Ltr., ECF No. 68-1.) As such, the JCCA Defendants' motion is GRANTED, on consent, and the Nassau County Defendants' motion is GRANTED, for the reasons set forth below.

BACKGROUND

The following facts are taken from the Second Amended Complaint ("SAC"). See Heras v. Metro. Learning Inst., Inc., No. 19-CV-2694, 2021 WL 66288, at *1 (E.D.N.Y. Jan. 7, 2021) (citing DeJesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 87 (2d Cir. 2013)). The SAC is organized into two sections, the first titled "Statement of Case"[4] and the second titled "Causes of Action," which includes new factual allegations not contained in the First Amended Complaint ("FAC").   (See FAC, ECF No. 13; SAC, ECF No. 57, at 2, 6.)

On or around July 2014, Plaintiff alleges that CPS and the Nassau County Police Department ("NCPD") commenced a three-

---

[3] In this letter, Plaintiff also indicates that she does not oppose dismissal of "Madonna Heights," which the Court interprets to include the "Madonna Heights Defendants," namely, Madonna Heights SCO Family of Services ("Madonna Heights") and Caseworkers and Director of Madonna Heights John & Jane Does #11-13 at 151 Burrs Lane, Dix Hills, Ny 11746 ("Madonna Heights Does") (collectively, the "Madonna Heights Defendants").

[4] The "Statement of Case" in the SAC appears virtually identical to the corresponding section in the First Amended Complaint ("FAC"), which the Court dismissed by Memorandum & Order dated March 31, 2020 ("3/31/20 M&O"). (FAC, ECF No. 13; 3/31/20 M&O, ECF No. 54.)

month long harassment campaign against her because she declined to speak to CPS without an attorney.  (SAC at 2.)  During this time, officers were sent to Plaintiff's home despite there being no reports of "imminent danger" to her children.  (Id.)

Due to the ongoing "harassment," Plaintiff "developed an adverse relationship" with the NCPD which resulted in her "illegal arrest" and the subsequent removal of her children for two weeks. (Id.)  On March 19, 2015 at approximately 9:00 a.m., Defendant Maher, a CPS caseworker, spoke with Plaintiff's five-year old son ("J.J.H.") at school.  (Id.)  J.J.H. told Maher that Plaintiff hit him and had a gun in the home.  (Id.)  That same morning, Maher attempted to visit Plaintiff's home, but nobody was there so Maher left a notice indicating she would come back on a later date.  (Id. at 3.)  After Plaintiff returned home and discovered the note, Maher came back with two officers at 2:30 p.m.  (Id.)  Plaintiff informed Maher that she would "not entertain any false allegations."  (Id.)  Maher, who perceived Plaintiff as uncooperative, threated to return with the police.  According to Plaintiff, Maher did not decide to remove her children immediately after speaking with J.J.H., but instead waited nearly six more hours to do so in a decision that was based on "personal motives and vendetta."  (Id.)  It is not clear from the SAC if this decision was made during the 2:30 p.m. visit, or during a third potential visit at approximately 4:00 p.m.  (See id. at 7.)  Notwithstanding,

Plaintiff claims the purported six-hour decision-making delay, coupled with the fact that the removal could have been effectuated while the children were at school without parental intervention, demonstrates Maher's lack of concern for her children's imminent safety. (Id. at 3, 5.)

That same day, Plaintiff alleges she was arrested and detained in a police car while officers searched her home for a gun. (Id. at 10.) Although an officer advised Plaintiff that a firearm was not discovered and that she would be released, the officer changed his purported course of action after speaking with Maher, who offered to give a statement. (Id.) The officer further advised Plaintiff that he would arrest her based on an affidavit Maher was in the process of completing. (Id.) Plaintiff further alleges that she was not afforded a hearing before the children were removed, nor after the children were removed, at which point Plaintiff was incarcerated. (See id. at 8-9.)[5]

---

[5] On March 18, 2015, the day prior to Maher visiting Plaintiff's home after speaking with J.J.H., it appears a hearing before Judge Edmund Dane was conducted during which Judge Dane of the Nassau County Family Court ordered "an interim period of CPS supervision." (Id. at 7.) During the hearing, Plaintiff allegedly explained to Judge Dane "the need for CPS to decipher their routine visits with the investigative visits, and that [she] was under the obligation to comply with the service visits but not the investigative visits." (Id.) Plaintiff alleges that Judge Dane was "unclear on procedural policy concerning that discrepancy and would advise both parties at a later date on the proper governance of the scenario." (Id.)

In April 2015, Plaintiff alleges that her criminal lawyer requested a hearing concerning the permanency of an unspecified order of protection issued by the criminal court, which apparently prevented her from utilizing available procedural options to regain custody of her children. (Id. at 11.) A hearing was held on May 6, 2015, during which two members of the DAO stated they would not be willing to lift the order of protection "as per the CPS workers [sic] request." (Id.) Plaintiff alleges the DAO failed to provide any justification to continue to enforce the order that was "independent of CPS influence," and that Defendants Rodriguez and Gittens, a foster care caseworker and supervisor respectively, "continue[d] to obstruct [her] legal retrieval of custody" as per the Family Court Act and the Child Abuse Prevention and Treatment Act ("CAPTA"). (Id.) Plaintiff then alleges that Gittens and Rodriguez conspired with the "County Attorney" to maliciously prosecute her, compromise her right to due process in post-removal proceedings, and have Plaintiff's children permanently removed from her custody. (Id. at 12.) The criminal charges against Plaintiff were apparently dismissed in May 2015. (Id. at 10.)

Once Plaintiff's children were in the custody of the Nassau County Department of Social Services ("DSS"),[6] she alleges DSS "failed to follow the proper mandates and protocol to reunify the family as the Family Court Act so adamantly states." (Id. at 4.) In response to Plaintiff's inquiries regarding the process to regain custody of her children, DSS gave her vague answers. (Id.) Plaintiff also wrote to the Directors of the FCU to raise concerns about Defendant Gittens, whom Plaintiff alleges to have been acting incompetently; however, Plaintiff never received a response. (Id.) Plaintiff alleges she told the Director and Assistant Directors of the FCU about the "caseworkers [sic] refusal to make the efforts to reunify [her] family." (Id. at 13.)

At an unspecified time, but after Plaintiff's children were allegedly in DSS care for eleven months, Plaintiff received a letter detailing the process for regaining custody. (Id. at 4, 12.) Plaintiff alleges she fulfilled the necessary requirements, but "the agency continued to act arbitrary and capricious in their unwillingness to consent to the return of [her] children. [She] was told by several officers of the court that it was the disdain toward [her] righteously indignant attitude that was causing them not to consent." (Id. at 4.) After substituting

---

[6] DSS was previously a named defendant in the FAC; however, the Court dismissed Plaintiff's claims against DSS with prejudice. (See 3/31/2020 M&O at 20-21.)

counsel during these proceedings, Plaintiff was instructed to "refrain from expressing [her] feelings outwardly." (Id. at 4-5.) Plaintiff ultimately regained custody of her children. (Id. at 5.)

Plaintiff also alleges that two of JCCA's social workers, Defendants Casey and Jenney, conspired with CPS to prevent Plaintiff from visiting and speaking with her children. (Id. at 13.) She further alleges that the conspiracy between JCCA and CPS involved their maintenance of fraudulent records of her children's mental health, diagnoses, and family history. (Id. at 5.) She avers that CPS medicated her children against her will, denied her visitation, and was negligent as their caretakers. (Id.) According to the SAC, Plaintiff's daughter, J.H., engaged in drugs, drinking and unsupervised absconding, and was sexually molested. (Id.) According to Plaintiff, medication that J.H. began to take impaired her cognitive function and caused her to become obese and at risk for diabetes. (Id.)

Following Plaintiff's arrest in March 2015, three of her children were committed to psychiatric wards and suffered trauma. (Id. at 6.) At an unspecified time, J.H. was discharged from JCCA and sent to a residential facility called Madonna Heights, where she remained for eleven months. (Id. at 14.) During this time, Plaintiff alleges that J.H.'s caseworkers and certain Madonna Heights Does prevented Plaintiff from visiting or calling J.H. (Id.)

Last, Plaintiff alleges that Defendant NYS Department of Children and Family Services ("NYS DCFS") fails to properly train and supervise their caseworkers to correct illegal practices in, inter alia, investigations, the detainment of children, the prosecution of innocent persons, and the reunion of families. (Id. at 15.)

## PROCEDURAL HISTORY

Plaintiff alleges she filed a notice of claim with Nassau County on June 2, 2015. (See Notice of Claim, ECF No. 57 at 21.) The instant case was commenced nearly three years later, on March 19, 2018. After many extensions of time, Plaintiff filed an Amended Complaint asserting: (1) a violation of CAPTA against CPS; (2) violations of Section 1983 against "each and every CPS caseworker and supervisor who had an involvement in the illegal seizure and unwarranted prolonged detainment of [Plaintiff's] children in CPS custody"; who had knowledge that CPS policy and procedure were not followed, and who did not intervene; (3) violations of Section 1983 against the DSS and CPS for failure to train, supervise, and discipline employees; (4) violations of Section 1985 and the Fourth, Fifth, and Fourteenth Amendments against the "defendants and prosecuting attorneys" for conspiracy and against CPS for attempting to suppress her freedom of speech, for violating the rights of her children to advocate for themselves, and for conspiring to keep her children away from and

compromising her rights as a parent; (5) against all Defendants for violations of the New York State Constitution, Article I, Sections 5, 6, 8, 11, and 12; and (6) against all Defendants for violations of various claims sounding in tort.  (See FAC at 5-7.)

By Memorandum & Order, the Court dismissed with prejudice Plaintiff's CAPTA claims against CPS, Fourth Amendment claims based upon the "seizure" of her children, and claims for municipal liability against DSS and CPS.  The Court also dismissed without prejudice Plaintiff's claims against Madonna Heights, JCCA and Rodriguez; Section 1983 claims for violations of due process, false arrest, malicious prosecution, unlawful search and municipal liability against Nassau County; and conspiracy claims pursuant to Section 1985.  The Court then granted Plaintiff leave to file the SAC, which was filed on June 15, 2020.  The SAC eliminated Nassau County DSS and CPS as defendants, but added the following new defendants: the DAO, FCAO, Hublebank, FCU Does, PO Does, DAO Does, Helber, Jenney, and the Madonna Heights Does.  Unchanged, however, were Plaintiff's individual causes of action.  The instant motions to dismiss by the JCCA and Nassau County Defendants followed.

In addition, it appears to the Court that Madonna Heights also served a motion to dismiss upon Plaintiff, but neglected to file the motion on ECF.  (See Madonna Heights Reply, ECF No. 69.) Notwithstanding, Plaintiff concedes to the dismissal of Madonna

Heights (see ECF No. 68-1); therefore, the Court will terminate it as a defendant in this action.[7]

ANALYSIS

I.  Legal Standard

        To withstand a motion to dismiss, a complaint must contain factual allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted).

        In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents

---

[7] The Court construes the parties' dismissal of "Madonna Heights" to encompass Plaintiff's claims against the Madonna Heights Does. To the extent Plaintiff has not abandoned those claims as well, the Court dismisses them sua sponte because, for purposes of Section 1983, Plaintiff has not plausibly alleged that the Madonna Heights Does are state actors nor, for the reasons set forth below, does Plaintiff plead any cognizable constitutional violations. Further, to the extent Plaintiff asserts any state law claims against the Madonna Heights Does, the Court declines to exercise supplemental jurisdiction over them because all federal claims in this action are dismissed with prejudice.

incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-52 (2d Cir. 2002).

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8.  Hiller v. Farmington Police Dep't, No. 12-CV-1139, 2015 WL 4619624, at *7 (D. Conn. July 31, 2015).

II.  Discussion

As noted above, Plaintiff concedes to the dismissal of the JCCA Defendants.  (See Dec. 1, 2020 Ltr.)  Therefore, the Court will only consider the merits of the Nassau County Defendants' motion to dismiss.

A.  CAPTA

In its prior decision, the Court dismissed Plaintiff's CAPTA claim against CPS with prejudice.  (See 3/31/20 M&O at 10-11.)  Notwithstanding, in the SAC, Plaintiff reasserted this very same claim.  (See SAC at 16.)  The Court's prior dismissal of the CAPTA claim against CPS constitutes law of the case, and is a determination that the Court will not revisit or reconsider.

Chiari v. New York Racing Ass'n Inc., 972 F. Supp. 2d 346, 362 (E.D.N.Y. 2013) ("[T]he law of the case doctrine . . . counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (quoting ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd., 547 F.3d 109, 112 n.3 (2d Cir. 2008))). Accordingly, this claim is DISMISSED WITH PREJUDICE.

B.   Section 1983

To state a claim under Section 1983, Plaintiff must plead that Defendants deprived her of a federal or constitutional right while acting under color of state law. Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011). Although the SAC implies more than a dozen different bases for Section 1983 claims, in actuality, the Court construes the SAC to allege claims for violations of due process, false arrest, false imprisonment, malicious prosecution, and unreasonable search and seizure, and will address each of those claims in turn.[8]

---

[8] Plaintiff alleges a one paragraph Section 1983 cause of action but names a litany of potential bases for such a claim within that singular cause of action. In addition to the claims described above for violations of due process, false arrest and imprisonment, malicious prosecution, and unreasonable search and seizure, Plaintiff also identifies claims for "malicious abuse of power," failure to intervene, "abuse of authority," "pattern of harassment, conspiracy, discrimination, selective enforcement,

1.  Substantive Due Process

"Parents have a 'substantive right under the Due Process Clause to remain together with their children without the coercive interference of the awesome power of the state.'" Southerland v. City of New York, 680 F.3d 127, 142 (2d Cir 2012) (quoting Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999)) (alterations omitted).  "'While a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the 'fact of the removal' itself." Id. (quoting Bruker v. City of New York, 92 F. Supp. 2d 257, 266–67 (S.D.N.Y. 2000)) (alteration omitted).  To establish a substantive due process violation based on the removal of children from the home, "a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Mortimer v. City of New York, No. 15-CV-7186, 2018 WL 1605982, at *14 (S.D.N.Y.

---

fabrication of evidence, denial of equal protection of the laws, [and] denial of right to fair trial." (See SAC at 16.)  Plaintiff does not clearly identify, nor is the Court able to distill, factual allegations to support the corresponding elements for this second subset of purported Section 1983 claims.  As such, to the extent the SAC can be construed to raise claims for "malicious abuse of power," failure to intervene, "abuse of authority," "pattern of harassment, conspiracy, discrimination, elective enforcement, fabrication of evidence, denial of equal protection of the laws, [and] denial of right to fair trial," those claims are DISMISSED WITH PREJUDICE pursuant to Rules 8 and 12(b)(6).

Mar. 29, 2018) (quoting Southerland, 680 F.3d at 151) (internal quotation marks omitted).

There is no violation of a parent's constitutionally protected interests where a caseworker "has a reasonable basis for thinking that the child is abused or neglected." Southerland, 680 F.3d at 152. The reasonable basis standard reflects the "need for unusual deference" to those who investigate allegations of child abuse or neglect. Id. A temporary removal for several days does not affect a substantive due process violation where the purpose is to keep the child safe. Id. at 152-53. Significantly, once a "court confirmation of the basis for removal is obtained, any liability for the continuation of the allegedly wrongful separation of parent and child can no longer be attributed to the officer who removed the child." Id. at 153 (internal quotation marks and citations omitted).

As the Court previously observed, "Plaintiff asserts a plausible substantive due process claim if a post-removal judicial proceeding was not promptly held to confirm that there exists a reasonable basis for the removal." (See 3/31/20 M&O at 14-15.) Although Plaintiff alleges such a proceeding was "never held" (see SAC at 8), that allegation is plainly contradicted by the record and need not be accepted as true. See Cohen v. Capital One Funding, LLC, 489 F. Supp. 3d 33, 44 (E.D.N.Y. 2020). The day after Plaintiff's children were removed, on March 20, 2015, CPS

filed a petition in Nassau County Family Court regarding the temporary removal. (See Petition, ECF No. 65-3.) Thereafter, on March 23, 2015, Judge Dane of the Nassau County Family Court held a preliminary hearing pursuant to Section 1027 of the Family Court Act, and issued an "Order on Application for Temporary Removal" ("OATR") that same day.[9] (See OATR, ECF No. 65-4.) Although the OATR indicates that Plaintiff was incarcerated at the time of the hearing and "not produced," she was nevertheless "served" with the removal petition and an attorney appeared on her behalf before Judge Dane. (Id. at 2.)

Based upon the OATR, which demonstrates that there was a post-deprivation hearing, coupled with the information obtained by Maher throughout her investigation, the Court finds that there was "a reasonable basis for thinking that [Plaintiff's] child[ren] [were] abused or neglected," such that Plaintiff cannot viably claim a violation of her substantive due process rights. Southerland, 680 F.3d at 152. Accordingly, Plaintiff's substantive due process claims are DISMISSED WITH PREJUDICE.

---

[9] The OATR is a document that the Court takes judicial notice of and may properly consider in adjudicating the instant motion to dismiss. See LeClair v. Vinson, No. 19-CV-0028, 2019 WL 1300547, at *1 (N.D.N.Y. Mar. 21, 2019) ("The Court takes judicial notice of the Family Court orders."), report and recommendation adopted, 2019 WL 2723478 (N.D.N.Y. July 1, 2019); see also Trombley v. O'Neill, 929 F. Supp. 2d 81, 103-05 (N.D.N.Y. 2013)(taking judicial notice of family court orders).

2.   <u>Procedural Due Process</u>

Both "parents and the children may have a cause of action for violation of the Fourteenth Amendment under a theory of denial of procedural due process." <u>Southerland</u>, 680 F.3d at 142. In the Second Circuit, "before parents may be deprived of the care, custody, or management of their children without their consent, due process -- ordinarily a court proceeding resulting in an order permitting removal -- must be accorded to them." <u>Id.</u> at 149 (internal quotation marks and citation omitted). However, "children may be removed without a court order or parental consent in emergency circumstances where there is objectively reasonable evidence that the 'children will be left bereft of care and supervision' and that the risk of harm to the children is imminent." <u>Mortimer</u>, 2018 WL 1605982, at *16 (quoting <u>Southerland</u>, 680 F.3d at 149).

Here, it is not disputed that Plaintiff's children were initially removed without a court order or parental consent. The issue is whether, as a matter of law, sufficient emergency circumstances existed to justify the lack of pre-removal hearing. The Court answers that question in the affirmative.

Plaintiff alleges no such emergency circumstances existed for two reasons: (1) the note Maher left after her first visit on March 19, 2015 did not indicate she would return that same day, but that she would return on March 23, 2015; and

(2) there was a nearly six-hour period between J.H.H.'s complaint to Maher, and the subsequent removal of Plaintiff's children when they returned from school later that day.  In response, the Nassau County Defendants argue that it is evident from Maher's note that she was "attempting to conduct a routine court ordered 'once per month visit'" and not visiting based upon J.H.H.'s statements. (Nassau County Defs. Reply at 3-4.)  The Nassau County Defendants further contend that the removal was promptly effectuated after the child's complaint to Maher, and emergency circumstances existed due to not only the child's statements of physical abuse and presence of a gun, but because Plaintiff was arrested and incarcerated that day.  (Nassau County Defs. Support Memo at 15-16.)

The Court need not resolve the issue of fact concerning the reason for Maher's first visit to Plaintiff's home on March 19, 2015 for purposes of resolving the instant motion.  While it is true courts have found procedural due process violations in cases such as this where there is a "lag of time between the end of the investigator's interview and the removal of the children," Hollenbeck v. Boivert, 330 F. Supp. 2d 324, 332 (S.D.N.Y. 2004), such cases illustrate why Plaintiff's allegations here fall short. For example, in Hollenbeck, after receiving a report of suspected abuse towards the plaintiffs' son, an investigator for the New York City Administrator for Children's Services ("ACS") visited

the plaintiff's home. Id. at 327. During the visit, the investigator interviewed the plaintiffs' family members and allegedly determined the son's injury was caused by an accident. Id. at 333. Thereafter, the investigator left the home, went back to the ACS to consult with supervisors, and then ordered the child removed. Id. The present case is distinguishable from Hollenbeck, because the decision to remove Plaintiff's children coincided with Maher's attempt to interview Plaintiff and the NCPD's search of Plaintiff's home. As such, Plaintiff's arguments concerning a delay are unpersuasive.

Moreover, the Court agrees with the Nassau County Defendants that sufficient emergency circumstances existed to obviate the need for a pre-removal hearing. Significantly, Plaintiff was arrested and incarcerated the same day her children were removed. Regardless of what transpired that morning between J.H.H. and Maher, or what was discovered in the home, Plaintiff's arrest and incarceration would have left the children without care and supervision. See Mortimer, 2018 WL 1605982, at *16 (quoting Southerland, 680 F.3d at 149).[10] Accordingly, Plaintiff's procedural due process claim based upon the lack of a pre-removal hearing is DISMISSED WITH PREJUDICE.

---

[10] The OATR also indicates that "[t]here is no non-respondent parent, relative or suitable person with whom the child[ren] may reside." (See OATR at 7.)

To the extent Plaintiff asserts additional procedural due process claims based upon the adequacy of post-removal proceedings or other grounds, any such claims are also DISMISSED WITH PREJUDICE.  See Goonewardena v. N. Shore Long Island Jewish Health Sys., No. 11-CV-2456, 2012 WL 7802351, at *14 (E.D.N.Y. Nov. 5, 2012), report and recommendation adopted, 2013 WL 1211496 (E.D.N.Y. Mar. 25, 2013), aff'd, 597 F. App'x 19 (2d Cir. 2015). Despite the Court's previous grant of leave to amend for Plaintiff to clarify the scope of her due process claims and provide additional details concerning the substance of the post-removal hearing (or hearings) and orders of protection, the SAC sheds no such light.

For example, Plaintiff appears to assert a procedural due process violation based upon actions taken by two District Attorneys at a May 6, 2015 hearing.  (See SAC at 11.)  More specifically, Plaintiff alleges the DAO Does: (1) would not agree to lift a "criminal order of protection" that Plaintiff claims "obstruct[ed] all the procedural options [she] had for a judicial proceeding that could have allowed [her] to regain custody," and (2) "failed to give any justification of the enforcement of the temporary order of protection that was independent of CPS influence."  (See SAC at 11.)  Through this, Plaintiff alleges efforts were made by the DAO Does to deny her procedural due process.  (Id.)  Even if these allegations can be construed as a

procedural due process claim, the DAO Does would nonetheless be entitled to absolute prosecutorial immunity.  See Player v. Sini, No. 21-CV-5613, 2021 WL 5084172, at *3 (E.D.N.Y. Nov. 1, 2021); see also Buckley v. Fitzsimmons, 509 U.S. 259, 281 (1993) (concluding absolute prosecutorial immunity shields prosecutors from any Section 1983 liability for acts occurring within their roles as advocates for the state).

The Court also distills a procedural due process claim against Gittens and Rodriguez based upon Plaintiff's allegations that they "conspired with [the] County Attorney" to violate her procedural due process rights in post-removal proceedings because they provided "repeatedly obscure and vague responses" to Plaintiff's "numerous inquiries as to what steps [she] should take to have [her] children returned."  (See SAC at 12.)  Despite liberally construing these allegations, the Court is unable to distill a constitutional violation.  Regardless of the adequacy of Gittens' and Rodriguez's responses to Plaintiff's inquiries, at most, these allegations can be construed to state that they may have negligently carried out their job functions.  But it is well settled that "[a]llegations of negligence are insufficient to state a claim under § 1983"; therefore, these claims are DISMISSED WITH PREJUDICE.  Butler v. N.Y. State Corr. Dep't, No. 94-CV-5054, 1996 WL 438128, at *3 (S.D.N.Y. Aug. 2, 1996) (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)).

3. <u>False Arrest, False Imprisonment, and Malicious Prosecution</u>

The Court will consider Plaintiff's claims for false arrest, false imprisonment, and malicious prosecution collectively. See <u>Jackson ex rel. Jackson v. Suffolk County</u>, 87 F. Supp. 3d 386, 403 (E.D.N.Y. 2015).

To succeed on a Section 1983 claim for false arrest, the plaintiff must show "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." <u>Avant v. Miranda</u>, No. 21-CV-0974, 2021 WL 1979077, at *4 (E.D.N.Y. May 18, 2021) (quoting <u>Wheeler v. Kolek</u>, No. 16-CV-7441, 2020 WL 6726947, at *4 (S.D.N.Y. Nov. 16, 2020)). Moreover, "[u]nder New York law, false arrest and false imprisonment are one and the same, and the elements for both are the same as for a false arrest claim under § 1983." <u>Hershey v. Goldstein</u>, 938 F. Supp. 2d 491, 515 (S.D.N.Y. 2013). The existence of probable cause is a complete defense to these claims. See <u>Hatcher v. City of New York</u>, No. 15-CV-7500, 2018 WL 1583036, at *3 (S.D.N.Y. Mar. 27, 2018).

The Second Circuit has described probable cause as "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has

committed . . . a crime." Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013) (quoting Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006)). "To assess probable cause, a court considers only the facts 'available to the officer at the time of the arrest and immediately before it.'" Ashley v. City of New York, 992 F.3d 128, 136 (2d Cir. 2021) (quoting Stansbury, 721 F.3d at 89). "'[S]ubjective intentions' of the arresting officer 'play no role in ordinary, probable cause Fourth Amendment analysis.'" Selvaggio v. Patterson, 93 F. Supp. 3d 54, 67 (E.D.N.Y. 2015) (quoting Whren v. United States, 517 U.S. 806, 813 (1996)).

Here, Plaintiff was arrested for endangering the welfare of a minor based upon statements made to Maher by Plaintiff's five-year-old child which indicated that Plaintiff physically harmed him. However, Plaintiff contends that the NCPD did not possess any direct knowledge of this information, and consequently, lacked probable cause to arrest her. (See Opp'n at 2.) The Court disagrees.

"It is well-settled that a law enforcement official has probable cause to undertake an arrest where he has received the pertinent information from some individual -- typically, the alleged victim or an eyewitness." Daniels v. D'Aurizo, 564 F. Supp. 2d 194, 198 (W.D.N.Y. 2008) (citing Donovan v. Briggs, 250 F. Supp. 2d 242, 251 (W.D.N.Y. 2003)). Moreover, pursuant to the "collective or imputed knowledge doctrine, an arrest or search is

permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest was known by other law enforcement officials initiating or involved with the investigation." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001) (citing United States v. Hensley, 469 U.S. 221, 230-33 (1985)).  "The rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." United States v. Valez, 796 F.2d 24, 28 (2d Cir. 1986); see also United States v. Fleming, No. 18-CR-0197, 2019 WL 486073, at *7 (E.D.N.Y. Feb. 6, 2019) ("Under [the collective knowledge] doctrine, a police officer may act reasonably in relying on information from other law enforcement officers, even if he is not personally aware of the facts that provided the probable cause underlying the information he received." (citing Colon, 250 F.3d at 135)).

       In view of these principles, the Court finds that probable cause existed for Plaintiff's arrest.  The arresting NCPD officers were entitled to rely upon the information provided to them by Maher, which she obtained directly from Plaintiff's son. In addition, Plaintiff has failed to proffer any cogent allegations or reasoning as to why it was unreasonable for the officers to

rely upon the information provided to them by Maher.  Although Plaintiff appears to argue that Maher or the NCPD had illicit motives or a vendetta to arrest her, "it is well settled that the officers' subjective motivation for the arrest is irrelevant to the probable cause determination." See Jackson, 87 F. Supp. 3d at 406 (citing Arkansas v. Sullivan, 532 U.S. 769, 771-72 (2001)).  Accordingly, Plaintiff's claims for false arrest and for false imprisonment are DISMISSED WITH PREJUDICE.

The existence of probable cause is also a complete defense to a claim for malicious prosecution.  Ramirez v. Port Auth. of N.Y. & N.J., No. 15-CV-3225, 2015 WL 9463185, at *5 (S.D.N.Y. Dec. 28, 2015) (citing Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010)).  In the malicious prosecution context, the probable cause standard is slightly higher than the standard applicable in false arrest cases and false imprisonment cases.  To wit, "probable cause . . . has been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Stansbury, 721 F.3d at 95.

For reasons similar to those which support the Court's finding that probable cause existed for Plaintiff's arrest and imprisonment, the Court also holds that probable cause warranted Plaintiff's prosecution.  See Ramirez, 2015 WL 9463185, at *5 ("[T]here was sufficient information such that the DA's office

could reasonably believe [Plaintiff] was guilty of the offense[] at the early stage of h[er] prosecution.”). Accordingly, Plaintiff's claim for malicious prosecution is DISMISSED WITH PREJUDICE.

### 4. Unreasonable Search and Seizure

The Court construes the SAC to allege Fourth Amendment claims based upon the warrantless search of Plaintiff's home and the seizure of Plaintiff's children. The Court will only consider the search claim here because the Court previously dismissed Plaintiff's seizure claim with prejudice, and will not revisit that determination here. (See 3/31/20 M&O at 19-20.)

Pursuant to the Fourth Amendment, warrantless searches inside of a home are illegal unless an exception to the warrant requirement exists. One exception to the warrant requirement is the existence of exigent circumstances. Thompson v. Clark, 364 F. Supp. 3d 178, 190 (E.D.N.Y. 2019). “[T]he essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an urgent need to render aid or take action.” Loria v. Gorman, 306 F.3d 1271, 1284 (2d Cir. 2002) (citation and quotations omitted). “[P]olice officers may enter a dwelling without a warrant to render emergency aid to a person whom they reasonably believe to be in distress and in need of that assistance.” Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998). “They may do this if, based on

the totality of the circumstances known to the investigating officers at the time of entry, it was 'objectively reasonable' for them to do so." Thompson, 364 F. Supp. 3d at 190 (citing Tierney, 133 F.3d at 196).

The Court has already determined that emergency circumstances existed to justify the lack of a pre-deprivation hearing prior to the removal of Plaintiff's children. "[T]here is no practical difference between emergency circumstances -- the standard used to evaluate plaintiff['s] Fourteenth Amendment claim on [his] children's removal -- and probable cause/exigent circumstances -- the standard used to evaluate the plaintiff['s] Fourth Amendment claim." Southerland v. Woo, 44 F. Supp. 3d 264, 276 (E.D.N.Y. 2014). Therefore, in light of the Court's finding that emergency circumstances justified the taking of Plaintiff's children without a pre-deprivation hearing, the Court also finds that exigent circumstances existed to justify the warrantless search of Plaintiff's home. See Callahan v. City of New York, 90 F. Supp. 3d 60, 73 (E.D.N.Y. 2015) ("Therefore, the Court having found that there were probable cause and exigent circumstances to justify the officers' taking of the children to ACS, the Court must now also find that there were emergency circumstances in this case."). Accordingly, Plaintiff's claim for unreasonable search is DISMISSED WITH PREJUDICE.

C.   Section 1985

To state a claim for conspiracy in violation of an individual's constitutional rights, a plaintiff must show: "(1) a conspiracy (2) for the purpose of depriving a person of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Salgado v. City of New York, No. 00-CV-3667, 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (citations omitted). Although Plaintiff alleges a claim pursuant to Section 1985, such a claim fails as a matter of law for two reasons.  First, the SAC contains only "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of [her] constitutional rights."  See Walker v. O'Connor, No. 22-CV-0581, 2022 WL 2341420, at *4 (N.D.N.Y. June 29, 2022) (quoting DeRouseau v. Fam. Ct., Westchester County, No. 21-CV-8716, 2022 WL 1747859, at *3 (S.D.N.Y. May 31, 2022)), report and recommendation adopted, 2022 WL 2805462 (N.D.N.Y. July 18, 2022).  And second, the Court has already determined there are no underlying constitutional violations which could serve as a predicate for a Section 1985 claim.  See Oliver v. Penny, No. 21-CV-0111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (affirming dismissal of Section 1983 and Section 1985 claims for conspiracy where plaintiff

"did not plausibly allege an underlying constitutional violation"). Accordingly, Plaintiff's claims pursuant to 42 U.S.C. § 1985 are DISMISSED WITH PREJUDICE.

    D.   <u>Municipal Liability</u>

Plaintiff also alleges that Nassau County and the NYS DCFS "had facto policies, failed to properly train their caseworkers, or supervise and discipline their caseworkers to correct illegal practices in investigations, abuse of power, illegal detainment of children obligation not to promote or condone perjury and/or assist prosecution of innocent persons, and failure to reunify the family." (SAC at 17.) As an initial matter, any claims against the NYS DCFS are <u>sua sponte</u> DISMISSED WITH PREJUDICE because NYS DCFS is an agency of the State of New York, and states and their agencies are protected by sovereign immunity as guaranteed by the Eleventh Amendment. <u>Panarello v. Suffolk County Police</u>, No. 20-CV-3281, 2020 WL 4819496, at *1 (E.D.N.Y. Aug. 19, 2020) (citing <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984)).

With respect to Plaintiff's municipal liability claims against Nassau County, the Court previously dismissed without prejudice such claims in the FAC because Plaintiff did not plausibly allege the existence of any customs or policies in Nassau County. (<u>See</u> 3/31/20 M&O at 21.) Plaintiff's SAC is deficient for the same reasons because the entirety of Plaintiff's municipal

liability claim, which is set forth above, does not give rise to the level of custom or policy required for municipal liability. Further, Plaintiff cannot prevail on her <u>Monell</u> claim as a matter of law.  "It is well-settled that a Monell claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation." <u>Oquendo v. City of New York</u>, 492 F. Supp. 3d 20, 32 (E.D.N.Y. 2020) (quoting <u>Mastromonaco v. Cty. Of Westchester</u>, 779 F. App'x 49, 51 (2d Cir. 2019)).  Accordingly, Plaintiff's municipal liability claims against Nassau County are also DISMISSED WITH PREJUDICE.

      E.   <u>Remaining State Law Claims</u>

Having dismissed Plaintiff's federal claims, the Court declines to retain jurisdiction to address Plaintiff's remaining state law claims, which arise under the New York State Constitution and sound in tort.  <u>One Commc'ns Corp. v. J.P. Morgan SBIC LLC</u>, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims.").  Accordingly, Plaintiff's state law claims are also DISMISSED.

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED** that the motions to dismiss by the JCCA Defendants (ECF No. 64) and the County Defendants (ECF No. 65) are GRANTED;

**IT IS FURTHER ORDERED** that the Madonna Heights Defendants are DISMISSED from this action, on consent (see ECF Nos. 68 & 69);

**IT IS FURTHER ORDERED** that Plaintiff's claims against the remaining Defendants are also DISMISSED;

**IT IS FURTHER ORDERED** that the dismissal of Plaintiff's federal claims is WITH PREJUDICE and the dismissal of Plaintiff's state law claims is WITHOUT PREJUDICE.  In light of the fact that Plaintiff has already been afforded two opportunities to amend her complaint, Plaintiff will not be granted any further leave to amend, especially here where there are no viable federal claims; and

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to mark this case CLOSED.[11]

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 28, 2022
       Central Islip, New York

---

[11] In light of Plaintiff's consent to receive electronic notification (ECF No. 71), the Court is not requiring Defendants to serve a copy of this Memorandum & Order upon Plaintiff.